UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11930-RGS

LISA MORSE and MARK MORSE

v.

FORD MOTOR COMPANY

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO PRECLUDE PLAINTIFFS' EXPERT

July 9, 2010

STEARNS, D.J.

This products liability case arises from a motor vehicle accident in which Mark

Morse, the driver of a 2004 Ford Focus, "lost control" of the car and "struck the shoulder

guardrail." Opp'n to Mot. to Preclude, at 2. Morse's wife Lisa , a passenger in the car, was

injured.  Plaintiffs' sole expert witness, Robert Gallagher, is of the opinion that the accident

"was caused by a defective tie rod assembly," that Lisa Morse's personal injuries resulted

from or were exacerbated by a defective airbag system (which did not deploy), and that

Mark Morse "did not contribute to the cause of this event."[1]  Dkt #16, at 5, 10.  Defendant

Ford Motor Company moves to preclude Gallagher's testimony, contending that he is

unqualified to render any of his proffered expert opinions.  Ford also maintains that

---

[1] In a report dated February 21, 2006, Gallagher states that his post-accident examination of the vehicle showed "the front right tire was detached . . . due to a fracture of the axle shaft caused by impact with the guardrail. . . . [T]he ball socket that was still attached to the steering center assembly lacked any trace of lubricant and [contained] . . . thin weathered chrome chips.  This resulted in the separation of the tie rod ball from its coupling and led to a loss of control of the steering of the vehicle." Id.  With regard to the airbag system, Gallagher opines that "when the vehicle struck the guardrail in this accident, due to the impact direction of thrust force on contact with the guardrail, it should have deployed." Id. at 3.

Gallagher's opinions lack any reliable foundation.   The Morses rely principally on Gallagher's "long and productive career as an accident reconstruction expert" and on the assertion that "Ford Motor Company wants this court to disqualify [Gallagher] essentially for not possessing an engineering degree or advanced degree."  Id. at 4.  The Morses contend that Gallagher should be permitted to testify as an expert because he has

> relevant knowledge about the vehicle in question that he examined on two separate occasions along with its component parts.   He also does possess the necessary background and experience in order to render an expert opinion concerning the cause of the accident and the defects that he observed.  The weight to be given to his testimony and opinions should be left to the trier of facts.

Id.  Because the court agrees that Gallagher is unqualified to render an expert opinion on any material subject under litigation, the motion to preclude his expert testimony will be ALLOWED.

In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court abandoned the general acceptance test of Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), noting the considerable academic and judicial criticism of Frye's ultra-orthodox approach to the admissibility of expert testimony based on scientific principles, and finding it superseded by the more liberal relevancy test of Fed. R. Evid. 702.[2]  "That the Frye test was displaced by the Rules of Evidence does not mean, however, that the Rules themselves place no limits on the admissibility of purportedly scientific evidence."

---

[2]Under Rule 702 of the Federal Rules of Evidence, to assist a jury "a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Daubert, 509 U.S. at 589.  Daubert imposed a duty on federal trial judges to play the role of "gatekeeper," insuring that the fact-finding process does not become distorted by "expertise that is *fausse* and science that is junky."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 159 (1999) (Scalia, J., concurring). Two gateposts frame the exercise of a judge's discretion to admit or exclude expert testimony.  First, the witness must be shown to be sufficiently qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Second, the Federal Rules of Evidence require that the judge "ensure that any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable" (and helpful to the finder of fact).  Daubert, 590 U.S. at 589.

A footnote in Daubert had led many courts and commentators to conclude that the Supreme Court had intended the "gatekeeper" provision to apply only to expert opinion based on novel scientific theory and hypothesis and not to opinions based on experience, training, empirical observation, or technical expertise.  Id. at 590 n.8.  Any doubts, however, were resolved in Kumho Tire.  "We conclude that Daubert's general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."  Id., 526 U.S. at 141.  Justice Breyer, writing for a nearly unanimous Court, emphasized that no bright line divides "scientific" knowledge from other types of knowledge about which experts are called to testify.  "[W]hether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest 'upon an experience confessedly

foreign in kind to [the jury's] own.'  The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge." Id. at 149 (internal citation omitted).

As a result of KumhoTire, Daubert principles have been applied to wide range of expert testimony of a technical nature not involving novel scientific hypotheses.  See United States v. Mooney, 315 F.3d 54, 61-63 (1st Cir. 2002) (expert handwriting analysis); Commonwealth v. Powell, 450 Mass. 229, 238-239 (2007) (bloodstain pattern analysis); United States v. Havvard, 117 F. Supp. 2d 848, 851-852 (S.D. Ind. 2000), aff'd, 260 F.3d 597 (7th Cir. 2001) (latent fingerprint identification); Commonwealth v. Beliard, 443 Mass. 79, 91 (2004) (bunter tool mark ballistics identification); Habecker v. Clark Equip. Co., 36 F.3d 278, 290 (3d Cir. 1994) (accident reconstruction testimony); Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 569-570 (D.C. Cir. 1993) (economist's opinion as to future earnings); Berry v. City of Detroit, 25 F.3d 1342, 1350-1351 (6th Cir. 1994) (police disciplinary procedures).  The admission of expert testimony of all types lies within the broad discretion of the trial court.  Newell Puerto Rico Ltd. v. Rubbermaid, Inc., 20 F.3d 15, 20 (1st Cir. 1994).

The Morses represent that

Gallagher will testify that he inspected the subject vehicle and its component parts . . . and that it is his expert opinion that the accident was caused by a defective tie rod assembly with a second defect being the failure of the air bags to deploy. . . . Gallagher's opinion of the defect regarding the airbag system is that the passenger side airbag did not deploy when the vehicle struck the guardrail in this accident, and he believes that due to the impact direction of thrust force on contact with the guardrail, it should have

deployed.

Opp'n to Mot. to Preclude, at 2-3.  Gallagher has no expertise in the area of safety or

mechanical engineering or the design and manufacture of automobiles.[3]  To the extent that

he has an expertise, it is in accident reconstruction (which is not a material issue in this

case).[4]  Gallagher does not have an engineering degree nor has he done course work in

mechanical, electrical, electronic, software, or safety engineering – the applied sciences

figuring in the design of vehicles.  Nor does he have training or practical experience in

automotive repair work.[5]  (Gallagher has a high school diploma, he attended some law

enforcement classes at Stone Hill College and Massasoit College, and has had some

police academy training in basic motor vehicle law).  Id. at 161.  While Gallagher has

apparently done accident reconstructions for the RMV, neither his curriculum vitae nor his

---

[3]While plaintiffs represent that Gallagher has testified as an expert "in over 500 District Courts in Massachusetts, 230 Superior Courts, 185 Civil Courts, and 3 Federal Courts", his testimony involved "accident investigation-reconstruction."  Opp'n to Mot. to Preclude, at 3.  (The gross figures seem improbable, even if, as I presume, plaintiffs are referring to numbers of cases tried and not courts).  The testimony in any event did not concern safety engineering and/or products liability.  Id.

[4]Gallagher was employed from 1967 to 1989 by the Massachusetts Registry of Motor Vehicles (RMV).  From 1970 to 1976, Gallagher served as an RMV representative on an accident investigation and reconstruction team which reviewed fatal and "impending fatal" accidents.  Gallagher Dep. at 18.  From 1976 to 1979, he supervised RMV officers investigating accidents, and from 1979 to 1984, served as Supervising Special Review Officer ("The purpose was to insure minimum standards of investigation and to provide expertise and guidance where necessary.").  Id. at 14-15.  Gallagher also "developed and taught a basic accident investigation course at the RMV and other local police academies to RMV, municipal, state and federal enforcement personnel."   Dkt #27, Ex. F.  After retiring from the RMV, Gallagher worked for a private company which investigates accidents for insurance claims purposes.  Gallagher Dep. at 31.

[5]See MY COUSIN VINNIE, Perf. Marisa Tomei (Palo Vista Productions 1992).

deposition testimony establishes any specialized knowledge of tie rod assemblies, airbag systems, or for that matter, the Ford Focus.  Nor does he (or can he) offer any specialized insight of a medical or mechanical nature as to how the non-deployment of the Focus's airbags aggravated Lisa Morse's injuries.[6]

<u>ORDER</u>

Because Gallagher is manifestly unqualified to offer the expert opinions for which his testimony is proffered, Ford Motor Company's Motion to Preclude Plaintiff's Expert is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[6]Given the court's finding that Gallagher lacks the requisite training and experience to offer expert opinions as to possible defects in the Ford Focus's airbag system and tie rod assembly, or any reasons for the nature and extent of Lisa Morse's injuries, there is no need to delve into the bases for these opinions.  Suffice it to say that Gallagher is revealed in his deposition testimony to know next to nothing of the details of the accident. His opinions as to a defect in the design of the Ford Focus are based solely on a visual examination of the surviving tie rod ball and socket.  He has not reviewed any Ford engineering or manufacturing documents, the Ford Focus design specifications, or an exemplar tie rod assembly (nor does the court believe that he would understand them if he did).  With regard to the allegedly non-deploying airbag, Gallagher bases his opinion on "[t]he fact that the wheel was separate from the vehicle and that the axle broke in the right front wheel position was sufficient to cause airbag deployment."  Gallagher Dep. at 104.  Again, Gallagher has no knowledge of the design of the Ford Focus's airbag system nor had he made any effort to determine the speed of the car on its impact with the guardrail.  <u>Id</u>. at 69, 71.